UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRENT L. WIGGINS,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>　　　　　　　　Defendant. | Case No. C13-657-TSZ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Brent L. Wiggins seeks review of the denial of his Supplemental Security Income application. He contends the ALJ erred by: (1) failing to apply the two-step drug abuse and alcoholism ("DAA") analysis; (2) omitting any social limitations from his residual functional capacity ("RFC"); (3) misevaluating the opinions of treating doctor Elena Cotulbea, M.D., and consulting psychologists William Lysak, Ph.D., and Carla van Dam, Ph.D.; and (4) failing to obtain vocational-expert ("VE") testimony at step five. Dkt. 15. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). Specifically, the ALJ committed harmful error with respect to his consideration of Mr. Wiggins's substance abuse and his evaluation of Drs. Lysak's and van Dam's opinions. These errors affect and therefore require remand of the second

REPORT AND RECOMMENDATION - 1

and fourth issues, as well. Mr. Wiggins, however, fails to establish reversible error with respect to the ALJ's treatment of Dr. Cotulbea's opinions.

## BACKGROUND

After conducting a hearing on August 18, 2011, the ALJ utilized the five-step sequential evaluation process and found Mr. Wiggins not disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Steps two through five are relevant to this appeal. At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found Mr. Wiggins's degenerative disk disease, right knee peripheral lateral meniscus tear, PTSD, personality disorder, and marijuana and alcohol dependence to be severe. Tr. 18. Step three asks whether a claimant's impairments meet or equal a listed impairment ("Listings"). *See* 20 C.F.R. Part 404, Subpart P. Appendix 1. The ALJ found Mr. Wiggins's impairments did not satisfy this standard. Tr. 20.

If a claimant's impairments do not meet or equal a listed impairment, the ALJ must assess RFC and determine at step four whether the claimant is unable to perform past relevant work. The ALJ found Mr. Wiggins had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b); frequently climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. Tr. 22. The ALJ also found Mr. Wiggins could understand, remember, and perform simple and some complex tasks, and had no social limitations. *Id.* With that RFC, the ALJ found Mr. Wiggins unable to perform past relevant work. Tr. 38.

If a claimant cannot perform past relevant work, the burden shifts to the ALJ to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. After considering the Medical–Vocational Guidelines, the ALJ found that Mr. Wiggins could perform other unskilled light and sedentary

occupations that represent numerous jobs in the national economy.  Tr. 41.  The ALJ, therefore, concluded Mr. Wiggins was not disabled from December 14, 2009, through the date of the decision.  *Id.*

## DISCUSSION

*A.     The ALJ's consideration of Mr. Wiggins's drug abuse and alcoholism*

Mr. Wiggins contends the ALJ erred in failing to apply the two-step process for evaluating drug abuse and alcoholism.  Dkt. 15 at 15-17.  Where alcohol or drug abuse are implicated in a disability proceeding, the ALJ must first conduct the five-step sequential evaluation without separating out the impact of drug addiction or alcoholism.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  If the ALJ finds the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the DAA analysis under 20 C.F.R. §§ 404.1535 or 416.935.  *Id.*  On the other hand, if the ALJ finds the claimant is disabled and there is medical evidence of the claimant's drug addiction or alcoholism, then the ALJ should determine if the claimant would still be found disabled if the claimant stopped using drugs or alcohol.  *Id*.  If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied.  *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007).

There is no dispute that alcohol and drug abuse are implicated in this case; the ALJ found "marijuana and alcohol dependence" to be severe impairments at step two.  Tr. 18.  The parties disagree, however, on whether the ALJ properly addressed the issue.  Mr. Wiggins argues the ALJ erred by rejecting "various medical opinions on the grounds that those opinions took into account or may have taken into account substance use" before first determining whether he would be disabled without separating out the impact of drug addiction or alcoholism. Dkt. 15 at

16.  In other words, Mr. Wiggins argues the ALJ improperly jumped to the DAA analysis before first completing the five-step inquiry.  The Commissioner argues the ALJ "ultimately determined that Plaintiff was not disabled, even when considering his substance abuse" and therefore did not need to perform the DAA analysis to determine whether drug addiction or alcoholism was a material factor in his disability claim.  Dkt. 18 at 10-11.

The record supports Mr. Wiggins's contention.  Because the ALJ found "marijuana and alcohol dependence" to be severe impairments at step two, *see* Tr. 32, he was required to consider the effects of these impairments in the remaining steps of the initial five-step sequential evaluation.  The ALJ failed to do so.  The ALJ's RFC assessment lacks any discussion of the limitations caused by these impairments, an error in itself.  *See* 20 C.F.R. §§ 404.1545(e), 416.945(e) (ALJ must "consider the limiting effects of *all* of your impairment(s) . . ." in determining RFC (emphasis added)); SSR 96-8p.

Further, the ALJ should have proceeded with the five-step inquiry without attempting to determine the impact of Mr. Wiggins's substance abuse on his other impairments.  Instead, the ALJ improperly took into account Mr. Wiggins's substance abuse in considering his other impairments during the initial five-step inquiry.  As Mr. Wiggins points out, the ALJ rejected a number of medical opinions because of Mr. Wiggins's substance abuse.  For example, the ALJ gave little weight to the opinion of examining psychologist Phyllis Sanchez, Ph.D., in part because Mr. Wiggins's ongoing substance abuse "clouds the diagnostic picture and undermines the mental assessment." Tr. 35.  Similarly, the ALJ gave less weight to certain opinions by examining psychiatrist Katia Ronay, M.D., because of Mr. Wiggins's substance abuse and the "lack of clarity" regarding the true extent of this abuse due to his inconsistent reporting.  *Id.*  The ALJ also relied on the "lack of clarity" regarding Mr. Wiggins's substance abuse to discount

opinions by examining psychologist Steven Johansen, Ph.D., *id.*, and rejected the opinions of consulting psychologist Dr. David Deutch in part because there was no evidence he took into account substance abuse, Tr. 37.[1] The ALJ's decision thus shows he erroneously considered the effect of Mr. Wiggins's substance abuse in the initial five-step sequential evaluation.

In sum, although substance abuse was a major consideration in the ALJ's disability determination, the ALJ erred by failing to apply the Commissioner's regulations and the law of this Circuit requiring the ALJ to follow a specific two-step DAA analysis. The matter thus should be remanded with direction that the ALJ complete the initial five-step sequential evaluation without separating out the impact of substance abuse. *See Bustamante*, 262 F.3d at 955. Only if the ALJ finds that Mr. Wiggins is disabled under the five-step inquiry, should the ALJ evaluate whether Mr. Wiggins would still be disabled absent substance abuse. *Id.*

B.   *The ALJ's omission of social limitations from the RFC*

Mr. Wiggins claims the ALJ erred in assessing an RFC with no social limitations despite a step two finding that Mr. Wiggins's personality disorder was severe. Dkt. 15 at 18-20. In particular, Mr. Wiggins points to Drs. Sanchez's, Ronay's, and Johansen's opinions that he has social limitations due to anger management problems. *Id.* at 19. This issue is intertwined with medical opinions that must be reassessed on remand, as discussed above. Accordingly, the Court need not resolve this issue now because doing so would be premature.

C.   *The ALJ's evaluation of Dr. Cotulbea's May 2011 opinions*

Dr. Cotulbea completed a DSHS functional assessment form in May 2011[2] in which she

---

[1] The Court notes that although Dr. Deutch's opinion related to the Listings and therefore should have been considered at step three, the ALJ considered his opinion in determining the RFC. On remand, the ALJ should address Dr. Deutch's opinion at step three.

[2] The ALJ incorrectly notes that these opinions were rendered in March 2011, Tr. 33, however

REPORT AND RECOMMENDATION - 5

opined Mr. Wiggins's physical conditions were deteriorating and he was limited to standing for 5-15 minutes in an eight hour work day, sitting for one hour in an eight hour work day, lifting 20 pounds occasionally, and lifting five pounds frequently.  Tr. 466.  Dr. Cotulbea further opined Mr. Wiggins had postural, motor skill, and environmental restrictions.  Tr. 467.  She based her report on records and a physical evaluation of Mr. Wiggins's joint ranges of motion, which showed reduced ranges in the lumbar and cervical spine.  Tr. 467-69.

The ALJ gave little weight to these opinions because they were "inconsistent with evidence in the record including generally mild clinical findings, lack of continuous treatment with significant gaps, treatment limited to only conservative measures, and the claimant engaging in activities showing greater physical functioning ability . . . ."  Tr. 33-34.  Furthermore, the ALJ found that "Dr. Cotulbea failed to reference sufficient objective evidence (more than just reduced range of motion) to corroborate her more restrictive limitations," and "[t]here is no evidence of deterioration in [Mr. Wiggins's] condition."  Tr. 34.  The ALJ also noted that "[f]orms provided for purposes of welfare qualification are of less benefit in assessing claimant's functioning."  Tr. 33 n.17 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039, 1040, 1042 (9th Cir. 1995)).

Mr. Wiggins raises several objections to the ALJ's treatment of Dr. Cotulbea's opinions.  First, he contends the ALJ failed to recognize Dr. Cotulbea was a treating physician when rejecting her May 2011 opinions and therefore did not apply the correct legal standard when evaluating those opinions.  Dkt. 15 at 22.  The Commissioner responds that the ALJ specifically identified Dr. Cotulbea as a treating physician, Tr. 29, and regardless, the standard for rejecting a treating physician is the same as for an examining physician, Dkt. 18 at 2.  In reply, Mr. Wiggins

---

this misstatement is immaterial.

REPORT AND RECOMMENDATION - 6

points out that although the ALJ noted Dr. Cotulbea was a treating source in the factual summary, the ALJ expressly relied on law pertaining to a non-treating source, i.e., *Andrews*, 53 F.3d at 1042 n.3, when rejecting Dr. Cotulbea's opinions. Dkt. 19 at 8. Mr. Wiggins also contends the Commissioner was incorrect in arguing that treating and examining sources are subject to the same standard because a treating source's opinion is generally accorded more weight than that of an examining source. *Id.* (citing *Lester v. Chatter*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

      The Court agrees with Mr. Wiggins that the ALJ's reliance on *Andrews* indicates he erroneously considered Dr. Cotulbea to be a non-treating source when evaluating her May 2011 opinions. This is because the specific portion of *Andrews* that the ALJ quoted pertained to an examining doctor whom the claimant only visited in order to obtain benefits, 53 F.3d at 1042 & n.3, and this quotation would be relevant only if Dr. Cotulbea were such a doctor—but she was not. Nevertheless, Mr. Wiggins has not satisfied his burden of establishing that "the error alters the outcome of the case," and thus the Court deems it harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012) (court cannot reverse ALJ's decision base on harmless error and claimant has burden of showing that error is harmful). Although treating physicians' opinions generally are given more weight than those of examining physicians, *Lester*, 81 F.3d at 830-31, an ALJ is not compelled to accept a treating physician's opinion as conclusive, *Magellan's v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Importantly, when a treating or examining doctor's opinion is contradicted, the ALJ may reject it for specific and legitimate reasons supported by substantial evidence. *Andrews*, 53 F.3d at 1041. Because the same standard applies for rejecting both treating and examining physicians' opinions, Mr. Wiggins must establish the ALJ failed to satisfy that standard in order to prove harm. This, he does not

REPORT AND RECOMMENDATION - 7

do, as explained below.

Mr. Wiggins challenges three of the reasons given by the ALJ to reject Dr. Cotulbea's opinions. He maintains it was erroneous for the ALJ to reject the doctor's opinions based on "only conservative" treatment because he underwent knee surgery and back surgery. Dkt. 15 at 23. He also argues it was error for the ALJ to find that Dr. Cotulbea did not cite "sufficient" objective medical evidence to support her opinions given that they were consistent with her range of motion findings and other objective medical evidence in the record, such as MRI evidence. *Id.* Finally, he asserts the ALJ erred in finding Dr. Cotulbea's opinions "of less benefit" on the grounds that she provided those opinions to DSHS. *Id.* at 22-23.

Yet even assuming the ALJ erred in these respects, such errors are insufficient to reverse the ALJ because the ALJ gave other valid and unchallenged reasons to reject Dr. Cotulbea's opinions, and the allegedly invalid reasons do not negate the validity of the ALJ's decision. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). For example, the ALJ discounted Dr. Cotulbea's opinions because he found them inconsistent with the evidence in the record of generally mild clinical findings. Tr. 33, 24-27 (ALJ's detailed summary of the medical evidence); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject an opinion that is inconsistent with the medical record). The ALJ also rejected the doctor's opinions because they were inconsistent with Mr. Wiggins's level of activity. Tr. 34, 29-30 (ALJ's explanation of why Mr. Wiggins's activities show greater functioning than alleged); *see Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ may properly reject a treating physician's opinions that are inconsistent with the claimant's level of activity). Further, the ALJ pointed out that although Dr. Cotulbea opined Mr. Wiggins's condition was deteriorating, there was no such evidence. Tr. 34; *Thomas v. Barnhart*, 278 F.3d

REPORT AND RECOMMENDATION - 8

947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). As these are specific and legitimate grounds to discount Dr. Cotulbea's opinions, supported by substantial evidence, the Court affirms the ALJ's decision to give her opinions little weight. *See Carmickle*, 533 F.3d at 1162-63.

### D.   The ALJ's evaluation of Drs. Lysak's and van Dam's opinions

In February 2010, Dr. Lysak opined, among other things, that based on a mental status exam and Mr. Wiggins's daily activities, Mr. Wiggins "would be able to perform simple and some complex tasks for a normal work day/week [with] occasional interruptions from [psychological symptoms]." Tr. 290. He also adopted the opinions of Dr. Ronay that Mr. Wiggins "has the ability to understand simple instructions" and "will do well in a structured environment." *Id.* Dr. van Dam affirmed Dr. Lysak's opinions. Tr. 363. The ALJ gave significant weight to Dr. Lysak's opinions, specifically the opinion that Mr. Wiggins "was able to understand, remember, and perform simple and some complex tasks . . . ." Tr. 34. The ALJ, however, did not incorporate into the RFC any limitation related to occasional interruptions from psychological symptoms or a need for a structured work environment. *See* Tr. 22.

Mr. Wiggins contends the ALJ erred in implicitly rejecting Dr. Lysak's opinions regarding simple instructions and structured environment. Dkt. 15 at 8. With respect to the first issue, Mr. Wiggins notes that Dr. Lysak adopted Dr. Ronay's opinion that he could "understand simple instructions," but the ALJ's RFC includes simple and some complex tasks. *Id.* at 9. The Commissioner responds that the ALJ reasonably concluded Mr. Wiggins could handle simple and some complex tasks because Dr. Lysak's opinion included this limitation based on a mental status exam and Mr. Wiggins's daily activities. Dkt. 18 at 4. Although Dr. Lysak also adopted

1  Dr. Ronay's opinion of understanding simple instructions, the Commissioner maintains the ALJ
2  reasonably resolved the ambiguities and conflicts within the opinion. *Id.*
3      "[T]he ALJ is responsible for determining credibility, resolving conflicts in medical
4  testimony, and for resolving ambiguities." *Reddick v. Chatter*, 157 F.3d 715, 722 (9th Cir. 1998)
5  (citing *Andrews*, 53 F.3d at 1039); *see also Carmickle*, 533 F.3d at 1164; *Thomas*, 278 F.3d at
6  956-57. The ALJ must support his findings with "specific, cogent reasons." *Reddick*, 157 F.3d
7  at 722. Here, the ALJ provided no explanation for why he adopted Dr. Lysak's opinion that Mr.
8  Wiggins could perform simple and some complex tasks despite the doctor's contradictory
9  opinion that Mr. Wiggins could understand only simple instructions. *See* Tr. 34 (absence of
10 discussion in the ALJ's decision regarding the ambiguity in Dr. Lysak's opinion). The ALJ thus
11 erred in this respect.
12     Mr. Wiggins also argues the ALJ erred in failing to account for Dr. Lysak's opinion that
13 he would be able to persist for a normal work day and work week with "occasional interruptions"
14 from psychological symptoms. Dkt. 15 at 9-10. The Court agrees. Although the ALJ gave Dr.
15 Lysak's opinions "significant weight," the ALJ failed to account for or include any discussion of
16 Dr. Lysak's opinion regarding "occasional interruptions." *Cf. Batson v. Comm'r of Soc. Sec.*
17 *Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ need not include in RFC properly discounted
18 opinion evidence). The Commissioner all but concedes the ALJ's error on this issue by failing to
19 rebut Mr. Wiggins's argument.
20     Instead, the Commissioner argues that "[a]ny error with regard to occasional symptoms is
21 harmless because it is unlikely to change the result." Dkt. 18 at 5. More specifically, the
22 Commissioner reasons that the ALJ also relied on examining psychiatrist Dr. Johansen, who
23 opined Mr. Wiggins could understand, remember, and following simple and complex

REPORT AND RECOMMENDATION - 10

instructions, and that as an examining source, his opinion generally would be given more weight than that of Dr. Lysak, a non-examining source. *Id.*  The Commissioner's arguments miss the point.  At issue here is the impact of Mr. Wiggins's psychological symptoms on his ability to persist for a normal work day and work week.  Dr. Johansen offered no opinion on this issue. *See* Tr. 425-431.  Moreover, the Court concludes that the ALJ's error was harmful; on remand, the ALJ reasonably could adopt Dr. Lysak's opinion of "occasional interruptions" and revise Mr. Wiggins's RFC, which would impact steps four and five.  As such, the error was not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citation omitted).

Finally, Mr. Wiggins argues the ALJ erred in failing to consider Dr. Lysak's opinion that Mr. Wiggins would "do well in a structured environment" or include any similar limitation in his RFC.  Dkt. 15 at 8-9.  The Commissioner responds that the language "do well in a structured environment" is not a limitation, and thus there was no conflict between Dr. Lysak's opinion and the RFC.  Dkt. 18 at 5.  The Commissioner's argument is unpersuasive.  The ALJ failed to give any reasons to accept or reject Dr. Lysak's opinion about doing well in a structured environment. Hence, the Commissioner's interpretation of Dr. Lysak's opinion is an improper post hoc argument upon which the Court cannot rely.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Moreover, the record shows Dr. Lysak's statement constituted a limitation.  Referring to Dr. Roney, Dr. Lysak stated:  "MSE Dr. opined clmt has the ability to understand simple instructions; clmt is capable of working with supervisors; will do well in a structured environment. Adopting Dr. opinion based on medical evidence."  Tr. 290.  Dr. Roney opined: "[I]n terms of working, I believe that having structure would actually help him.  He probably

REPORT AND RECOMMENDATION - 11

would do better in a job that involves lots of routine and not a lot of changes with people given his problems of anger management." Tr. 372.  The record thus shows Dr. Lysak was adopting limitations found by Dr. Roney, and in Dr. Roney's opinion, Mr. Wiggins needed a structured environment to address his problems with anger and dealing with people.  The Court thus concludes the ALJ erred in failing to consider Dr. Lysak's opinion that Mr. Wiggins needed a structured work environment to deal with his anger problems.  The error was not harmless because the ALJ purported to give "significant weight" to the doctor's assessment but nonetheless failed to account for this limitation in assessing Mr. Wiggins's RFC.  On remand, the ALJ should reassess Dr. Lysak's opinions and determine what, if any, impact this would have on Mr. Wiggins's RFC.

E. *The ALJ's failure to obtain VE testimony at step five*

Mr. Wiggins contends the ALJ erred at step five in relying on the Medical-Vocational Guidelines without obtaining VE testimony.  Dkt. 15 at 10.  In light of the Court's conclusions that the ALJ erred with respect to his treatment of both Mr. Wiggins's substance abuse and Dr. Lysak's opinions, the ALJ will need to reconsider step five on remand.  It thus would be premature for the Court to resolve this claimed error now.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four.  Mr. Wiggins did not claim the ALJ erred at step two.  Thus on remand, the ALJ should proceed with the remaining steps of the five-step sequential evaluation without attempting to separate out the impact of Mr. Wiggins's substance abuse.  The ALJ should also reconsider Mr. Wiggins's alleged social limitations, as well as the opinions of Drs. Lysak and van Dam.

1  Only if the ALJ determines Mr. Wiggins is disabled under the initial five-step inquiry should the
2  ALJ should consider whether his substance abuse is a contributing factor material to that
3  determination.
4       A proposed order accompanies this Report and Recommendation.  Objections, if any, to
5  this Report and Recommendation must be filed and served no later than **October 30, 2013**.  If no
6  objections are filed, the matter will be ready for the Court's consideration on **November 1, 2013**.
7  If objections are filed, any response is due within 14 days after being served with the objections.
8  A party filing an objection must note the matter for the Court's consideration 14 days from the
9  date the objection is filed and served.  Objections and responses shall not exceed twelve pages.
10  The failure to timely object may affect the right to appeal.
11       DATED this 16th day of October, 2013.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13